## THE BUD.

## THE TRYPHENA C.

### No. 25013–R.

District Court, N. D. California, S. D.

May 12, 1948.

Gladstein, Anderson, Resner & Sawyer, of San Francisco, Cal., for libelant.

Derby, Sharp, Quinby & Tweedt, of San Francisco, Cal., for respondent vessel Bud.

Hall, Henry & Oliver, of San Francisco, Cal., for impleaded respondents.

ROCHE, District Judge.

This suit for damages grew out of a collision on August 6, 1947, between libelant's fishing boat and the respondent fishing vessel Bud, in which libelant's boat was holed and sunk. The impleaded respondents were dismissed at the close of the trial,

628

leaving for the court's decision a controversy solely between libelant and respondent Soriano, owner of the Bud. The fundamental question is whether an overtaking or crossing situation is involved.

Much of the testimony offered at the trial was conflicting but the record clearly discloses the following facts.

The collision occurred off the coast of Humboldt County in Northern California, near a fishing boat anchorage known as Shelter Cove. While it took place about 5:30 a. m. it was broad daylight, the visibility was good and the sea was fairly calm. The boats involved were small and each was being operated by a single person, the Bud by its owner, Soriano, and libelant Martin's unnamed vessel by himself. Each had spent the night at anchor and had got underway shortly before the collision occurred. Other boats were still anchored in the Cove.

Soriano, a man with many years experience in handling fishing boats, testified that he headed S x E to clear the anchored boats and proceed southerly and southeasterly along the coast to Fort Bragg, where he intended to see the Doctor and take on more fuel. He saw Martin get underway from a position off his starboard quarter and approach on a slightly converging course. Martin passed him on his starboard side and Soriano then gave his attention to the Tryphena approaching on his port bow. In the meantime, Martin had drawn ahead of the Bud and cut across its bow before pulling safely clear, with the result that the Bud ran into the port side of Martin's boat.

Martin testified that he was steering a SE course, intending to follow the coast southeasterly, and that Soriano's course was southwesterly, thus crossing his at almost right angles. The Burtons, impleaded respondents, on board the Tryphena, likewise placed the Bud on a southwesterly course. However, one Makings, another of libelant's witnesses, testified that his boat, the Lawrence, was lying at anchor, headed south; that he heard the Bud get underway from a point astern of the Lawrence; that she passed the Lawrence on the starboard side and that the collision took place ahead of the Lawrence,

off her starboard bow. He further testified that as the Bud passed along the Lawrence's starboard side, he looked out of his cabin and saw her. This corroborates Soriano's testimony as to the course he was following.

With this conflict in the evidence it is necessary to consider the probabilities in the situation. The coastline curves westward to form Shelter Cove so that a boat anchored there would have to steer a course somewhat east of south in order to run down the coast. Soriano testified that he was going to Fort Bragg to see a doctor and take on more fuel and this testimony was not contradicted. A southwesterly course would have led away from his destination, not toward it. Deliberate choice of such a course would have been unreasonable, nor is it probable that a man of Soriano's experience would steer such a course through error, even though he were steering without a compass. It is much more probable that libelant and his witnesses, who had Soriano running southwesterly, were honestly mistaken, confused, perhaps, by the change in direction of the coastline.

In this view of the evidence we have an overtaking situation with libelant Martin's boat the burdened vessel, since he was approaching from more than two points abaft the Bud's beam. Article 24 of the International Rules, 33 U.S.C.A. § 109, states the applicable law, as follows:

"Art. 24. Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.

"Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such a position, with reference to the vessel which she is overtaking that at night she would be unable to see either of that vessel's side lights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels shall make the overtaking vessel a crossing vessel within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaking vessel until she is finally past and clear.

"As by day the overtaking vessel can not always know with certainty whether

she is forward of or abaft this direction from the other vessel she should, if in doubt, assume that she is an overtaking vessel and keep out of the way."

The court finds that libelant Martin violated Article 24 by failing to keep clear of the Bud until he was finally past and clear and recovery, therefore, must be denied him.

In accordance with the foregoing it is Ordered that there be entered herein, upon findings of fact and conclusions of law, a decree in favor of the respondent vessel Bud and against the libelant; that the libel be dismissed; that the respondent vessel Bud be released and restored to the claimant Soriano, and that the respective parties pay their own costs.